WK:DEL
F. #2020R00491

Filed:
Clerks' Office
September 02, 2020

Case 1:20-cr-00342
Judge Margo K. Brodie
MagistrateJudge James Orenstein

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

YAKOV MOROZ,
        also known as "Koby,"

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____ Case 1:20-cr-00342

(T. 18, U.S.C., §§ 981(a)(1)(C),
1001(a)(3), 1343, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

1.      The defendant YAKOV MOROZ was a resident of Brooklyn, New York, and was the sole owner, officer and operator of several affiliated companies, which were engaged in the interstate transportation of household goods and property by commercial motor carrier ("motor carrier"), including but not limited to Great Movers Inc. and New City Movers Inc.

2.      Great Movers Inc., which also did business as Great Moving (collectively, "Great Movers"), maintained an office in Brooklyn, New York, and was advertised as a motor carrier engaged in the shipment of household goods. The defendant YAKOV MOROZ had control over Great Movers' operations and bank accounts.

3.     New City Movers Inc. ("New City Movers") maintained an office in Brooklyn, New York, and was advertised as a motor carrier engaged in the shipment of household goods.   The defendant YAKOV MOROZ had control over New City Movers' operations and bank accounts.

A.     Federal Motor Carrier Safety Laws and Regulations

(i)     Registration Requirements

4.     The Federal Motor Carrier Safety Administration ("FMCSA") was an agency of the United States Department of Transportation ("USDOT").   Its primary mission was to reduce fatalities and injuries involving commercial motor vehicles.   FMCSA adopted regulations governing motor carriers, including regulations requiring them to be properly licensed, insured, maintained and operated.

5.     Motor carriers operating in interstate commerce were required to register with FMCSA and obtain a USDOT number, pursuant to Title 49, United States Code, Sections 13901–13904.   A USDOT number was a unique identifier that aided FMCSA in collecting and monitoring a motor carrier's safety record and other information, including but not limited to audits, compliance reviews, crash investigations and inspections. Depending on the nature of the business of the motor carrier, many motor carriers operating in interstate commerce, including those engaged in the shipment of household goods, were also required to obtain interstate operating authority from USDOT.

6.     To obtain a USDOT number and operating authority, motor carriers were required to complete and submit to FMCSA, under penalty of perjury, a Form MCSA-1.   Form MCSA-1 required an applicant to provide, among other things, the following information: (i) the motor carrier's business address; (ii) the motor carrier's

insurance information; (iii) information regarding the motor carrier's compliance with USDOT safety regulations; and (iv) the motor carrier's relationship and affiliation with any other motor carrier within the preceding three years.

7. In particular, pursuant to Title 49, Code of Federal Regulations, Section 385.1003, a motor carrier was required to identify other motor carriers with common ownership, management, control or familial relationship, which are known as reincarnated or affiliated motor carriers. Title 49, Code of Federal Regulations, Section 385.1005 prohibited two or more motor carriers from using common ownership, management, control or familial relationship to avoid compliance with legal requirements or otherwise conceal non-compliance or a history of non-compliance.

8. According to FMCSA's USDOT Number Requirement Policy (MC-RS-2019-0001.1) (the "FMCSA Policy"), a corporation, partnership or other business organization could retain its USDOT number when there was a change in company officials, address or other demographic information, and the corporation, partnership or other business organization continued operations as the same legal person or entity. However, a new USDOT number was required, among other reasons, if the corporation, partnership or other business organization did not continue operations as the same legal person or entity. According to the FMCSA Policy, sole proprietorships that change ownership are prohibited from retaining the same USDOT number.

9. Pursuant to Title 49, Code of Federal Regulations, Section 390.19T, a motor carrier was also required to submit Form MCS-150 (Motor Carrier Identification Report) every other year or to report any material changes, such as a change in its ownership, within 30 days.

(ii)    Customer Protection Requirements

10.    In addition to their obligations under the FMCSA's registration requirements, companies engaged in the transportation of household goods in interstate commerce were subject to federal regulations set forth in Title 49, Code of Federal Regulations, Section 375.

11.    A company engaged in the transportation of household goods was required to provide customers with a written estimate of the charges for transportation and all related services based on a telephonic or physical inventory of the goods to be shipped, and to indicate whether the estimate was binding or non-binding.

12.    A binding estimate was an agreement made prior to transportation that guaranteed the total cost of the shipment based on the quantities and services listed in the estimate.   For binding estimates, a company was required to deliver the household goods, as contracted, upon full payment of the original estimate amount.   Any costs associated with the shipment of additional household goods or services that were not identified in the binding estimate were permitted to be billed after the goods were delivered, pursuant to Title 49, Code of Federal Regulations, Section 375.403.

13.    For non-binding estimates, the final charges were based on the actual weight or volume of the shipment, the services provided and the tariff provisions in effect. Under Title 49, Code of Federal Regulations, Section 375.703(b), the final charges for a shipment involving a non-binding estimate were not permitted to be increased above the initial estimate by more than 10 percent.

B.    The Scheme to Steal Customers' Money

14.    In or about and between August 2019 and August 2020, the defendant YAKOV MOROZ, together with others, defrauded customers and potential customers (the "victims") of Great Movers and New City Movers by first misrepresenting the estimated charges for moving services, and then forcing victims to pay additional money—at times, more than double the original estimate—by refusing to return, and threatening to sell, their belongings if the additional money was not paid.

15.    The defendant YAKOV MOROZ, together with others, induced victims to hire Great Movers and New City Movers by making false representations that Great Movers and New City Movers offered competitive rates for premium interstate moving services.   To the contrary, among other things, MOROZ, together with others, (i) quoted estimated charges for moving services that they had no intention of honoring, (ii) misrepresented the companies' physical locations, (iii) lied about the level of skill and experience of the movers who would transport the victims' goods, and (iv) falsely promised various quality control measures that would be used in transporting their goods.

16.    After a victim's household goods had been loaded into trucks and before delivery of the goods, persons acting at the direction of the defendant YAKOV MOROZ demanded—in person, by email and by telephone—additional money from Great Movers' and New City Movers' victims in excess of the original agreed-upon cost.

17.    When the victims refused to pay the additional money demanded in excess of the original agreed-upon cost, persons acting at the direction of the defendant YAKOV MOROZ at times threatened to keep the victims' belongings in storage and to

charge the victims the costs of the storage. Persons acting at the direction of the MOROZ also threatened, at times, to sell the victims' belongings.

18.     As a result of these threats and others, many victims ultimately paid the money that the defendant YAKOV MOROZ, together with others, demanded to ensure the return of the victims' possessions from Great Movers or New City Movers. Even when the victims gave in to the threats and paid the money demanded, their belongings were sometimes delivered weeks or months after the scheduled delivery dates, and valuable items were damaged or missing.

19.     As a result of the fraudulent scheme, the defendant YAKOV MOROZ, together with others, wrongfully obtained more than $100,000 from dozens of victims.

C.     The Scheme to Falsely Register Great Movers and New City Movers

20.     In or about and between August 2019 and April 2020, the defendant YAKOV MOROZ, together with others, took steps to hide his association with the various motor carriers that he owned, operated and controlled, including by submitting forms to FMCSA, on behalf of these motor carriers, which he knew contained false statements.

21.     For example, on or about September 5, 2019, the defendant YAKOV MOROZ submitted a Form MCS-150 (Motor Carrier Identification Report) to FMCSA, in which he reported Arc Transport LLC would now be known as Great Moving. In this form, MOROZ falsely stated, under penalty of perjury, that an individual named "Moye Gregory" was the sole proprietor, officer and partner of Great Moving. In fact, no one named "Moye Gregory" was any of these; instead, MOROZ had sole control of Great Movers.

22.     Additionally, on or about April 9, 2020, the defendant YAKOV MOROZ submitted a Form MCS-150 to FMCSA, in which he reported Mini Movers LLC

would now be known as New City Movers. In this form, MOROZ falsely stated, under penalty of perjury, that an individual named "Arthur Asel" was the sole proprietor, officer and partner of New City Movers. In fact, no one named "Arthur Asel" was any of these; instead, MOROZ had sole control of New City Movers.

COUNTS ONE THROUGH THREE
(Wire Fraud)

23. The allegations contained in paragraphs one through 19 are realleged and incorporated as if fully set forth in this paragraph.

24. On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant YAKOV MOROZ, together with others, did knowingly and intentionally devise a scheme and artifice to defraud customers and potential customers of Great Movers and New City Movers, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce, one or more writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date | Wire Communication |
|---|---|---|
| One | January 21, 2020 | Wire transfer of $700 from the account of Jane Doe-1, an individual whose identity is known to the Grand Jury, at JPMorgan Chase Bank in The Woodlands, Texas, to the defendant's JPMorgan Chase Bank account in Brooklyn, New York. |
| Two | April 15, 2020 | Wire transfer of $1,100 from the account of John Doe, an individual whose identity is known to the Grand Jury, at American Heritage Federal Credit Union in Philadelphia, Pennsylvania to the defendant's JPMorgan Chase bank account in Brooklyn, New York. |
| Three | June 1, 2020 | Wire transfer of $1,000 from the account of Jane Doe-2, an individual whose identity is known to the Grand Jury, at JPMorgan Chase Bank in Chicago, Illinois, to the defendant's JPMorgan Chase bank account in Brooklyn, New York. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS FOUR AND FIVE
(False Statements)

25.     The allegations contained in paragraphs one through nine and 20 through 22 are realleged and incorporated as if fully set forth in this paragraph.

26.     On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant YAKOV MOROZ, together with others, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Motor Carrier Safety Administration within the United States Department of Transportation, did knowingly and willfully make and use false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, as set forth below:

| Count | Approximate Date | Document | False Statement/Entry |
|---|---|---|---|
| Four | September 5, 2019 | Form MCS-150 for Great Moving | Identity of sole proprietor, officer or partner. |
| Five | April 9, 2020 | Form MCS-150 for New City Movers | Identity of sole proprietor, officer or partner. |

(Title 18, United States Code, Sections 1001(a)(3), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH THREE

27. The United States hereby gives notice to the defendant that, upon his conviction of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#2020R00491
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*YAKOV MOROZ, also known as "Koby,"*

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 1001(a)(3), 1343, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

*Devon Lash, Assistant U.S. Attorney (718) 254-6014*